Christopher V. DeVivo*
cdevivo@zlk.com
Michael N. Pollack*
mpollack@zlk.com
LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Yufei Wang (SBN 346170)
ywang@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*admitted *pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANDREW CHEUNG and NINA HARRIS, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

SLICKDEALS, LLC

Defendant.

Case No. 2:26-cv-00519-CAS-MBK

**PLAINTIFFS' OPPOSITION TO DEFENDANT SLICKDEALS, LLC'S MOTION TO DISMISS**

Hearing Date: June 1, 2026
Time: 10:00 a.m.
Judge: Hon. Christina A. Snyder
Courtroom: 8D

Complaint Filed: January 16, 2026

# TABLE OF CONTENTS


INTRODUCTION ........................................................................ 1
FACTUAL BACKGROUND ........................................................ 2
LEGAL STANDARD ................................................................. 3
ARGUMENT ........................................................................... 3
I. Plaintiffs Have Suffered a Concrete Injury to Establish Article III Standing ........................................................................ 3
II. Plaintiff Cheung Pleads a Claim Under the VPPA ........................ 5
A. Slickdeals is a VTSP ........................................................ 6
B. Plaintiff Cheung is a "Consumer" under the VPPA ..................... 7
C. The Disclosed Private Information Constitutes PII Under the VPPA 8
III. Plaintiffs Plead a Violation of CIPA § 631 .................................. 9
IV. Plaintiffs Plead a Violation of The Federal Wiretap Act .................. 13
V. Plaintiffs Plead a Claim Under CIPA § 638.51 ............................. 15
VI. Plaintiffs Plead a Claim under the UCL ...................................... 17
A. Plaintiffs have Standing Under the UCL ................................... 17
B. Defendant's Conduct is Unlawful Under the UCL ........................ 18
VII. Plaintiffs Plead Unjust Enrichment ........................................... 18
CONCLUSION ....................................................................... 19

# TABLE OF AUTHORITIES

**Cases**


*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ... 19

*Allison v. PHH Mortg.*,
No. 25-CV-05323-RFL, 2026 WL 899438 (N.D. Cal. Mar. 27, 2026) ... 13

*Archer v. NBCUniversal Media, LLC*,
No. 2:24-CV-10744-AB-JC, 2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025) ... 9

*Ballard v. Insomniac Holdings, LLC*,
No. 25-cv-00811-SI*,* 2025 WL 1696558 (N.D. Cal. June 17, 2025) ... 8

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super., Contra Costa Cty. Jan. 5, 2023) ... 12

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) ... 4

*Baysal v. Midvale Indem. Co.*,
No. 22-1892, 2023 WL 6144390 (7th Cir. Sept. 20, 2023) ... 5

*Bondi v. Vanderstok*,
604 U.S. 458 (2025) ... 6

*Byars v. HotTopic, Inc.*,
No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ... 11

*Caldwell v. InMobi Pte., Ltd.*,
No. 25-cv-09977-AMO, 2026 WL 1162828 (N.D. Cal. Apr. 29, 2026) ... 14

*Campos v. TJX Co.*,
No. 24-cv-11067-ADB, 2025 WL 360677(D. Mass. Jan. 31, 2025) ... 4

*Cappello v. Walmart Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019) ... 18

*Casillas v. Six Flags Ent. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) ... 15, 16

*Chandra v. Prager Univ. Found.*, No. 2:25-cv-03984-MCS-SK, 2025 WL 3049870 (C.D. Cal. Oct. 21, 2025)............... 8

*Chandra v. Prager Univ. Found.*, No. 2:25-cv-03984-MCS-SK, 2026 U.S. Dist. LEXIS 33002 (C.D. Cal. Jan. 27, 2026) ............... 9

*Christopherson v. Cinema Ent. Corp.*, 161 F.4th 525 (8th Cir. 2025) ............... 7

*D'Angelo v. Penny Opco, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)............... 12

*Dawson v. Univ. of Phx., Inc.*, No. 1:25-cv-03497, 2026 WL 92248 (N.D. Ill. Jan. 13, 2026) ............... 13

*Doe v. Tenet Healthcare Corporation*, 789 F. Supp.3d 814 (E.D. Cal. 2025) ............... 15

*Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868 (N.D. Cal. 2025)............... 18

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ............... 18

*Food Mktg Inst. v. Argus Leader Media*, 588 U.S. 427 (2019)............... 6

*Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 29, 2025) ............... 16

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025)............... 3, 11, 15, 18

*Gabrielli v. Insider, Inc.*, No. 24-cv-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ............... 4

*Gianne v. Accor Mgmt. US Inc.*, No. CV 25-2425-DMG (Ex), 2026 WL 925522 (C.D. Cal. Mar. 31, 2026)............... 10

*Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231 (D. Colo. 2018)............... 19

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021)............... 11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................16

*Heerde v. Learfield Commc'ns, LLC,*
741 F. Supp. 3d 849 (C.D. Cal. 2024)....................10, 12

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-cv-08002-SPG-E, 2024 WL 1626114 (C.D. Cal. Apr. 2, 2024)....................12

*In re BPS Direct, LLC*,
MDL 3074, 2023 WL 8458245, (E.D. Pa. Dec. 5, 2023)....................4

*In re Facebook Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020)....................3, 18

*In re Google Inc.*,
806 F.3d 125 (3rd Cir. 2015)....................14

*In re Hulu Privacy Litig.*,
No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012)....................8

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)....................17

*In re TikTok, Inc.,*
No. MDL 3144-GW-RAOx, 2025 WL 3628448 (C.D. Cal. Nov. 6, 2025)....................17

*In re TikTok, Inc.,*
No. MDL 3144-GW-RAOx, 2025 WL 3628598 (C.D. Cal. Nov. 5, 2025)....................17

*In re Vizio, Inc.,*
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................6, 8

*In re Zoom Video Communs Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021)....................18

*Irwin v. Jimmy John's Franchise*, *LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016)....................19

*Jackson v. Fandom, Inc.*,
No. 22-cv-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023)....................8

*Javier v. Assur. IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023)....................10

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 19

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 2:24-CV-01119-DC-CKD, 2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 12

*Krzyzek v. Openx Techs., Inc.*,
No. 25-cv-05588-SI, WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 12, 14, 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 3

*Martinez v. Mentavi, Inc.*,
No. 1:25-cv-228, 2025 WL 3780427 (W.D. Mich. Oct. 9, 2025) .......... 15

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 13

*Mikulsky v. Bloomingdale's, LLC,*
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 11, 12

*Mirmalek v. Los Angeles Times Communs. LLC,*
No. 24-cv-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 16

*Patel v. Facebook*,
932 F.3d 1264 (9th Cir. 2019) .......... 3

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 18

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) .......... 19

*Plotsker v. Envato Pty Ltd.*,
No. 2:24-cv-04412-MEMF-RAO, 2025 WL 2481422 (C.D. Cal. Aug. 26, 2025) ... 4, 9

*Q.J., v. Powerschool Holdings, LLC*,
No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) .......... 13

*R.S. v. Prime Healthcare Servs.*,
No 5:24-cv-00330-ODW (SPx), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 15

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 14

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ............................ 12

*Rodriguez v. Plivo Inc.*,
No.24STCV08972, 2024 WL 5184413 (Cal. Super., L.A. Cty. Oct. 2, 2024) ........... 16

*Roe v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) ............ 15

*Seattle-First Nat'l Bank v. Conaway*,
98 F.3d 1195 (9th Cir. 1996) ........................................................................ 6

*Semien v. PubMatic Inc.*,
No. 25-cv-03164-SI, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ............................ 15

*Smart v. Main Line Health*,
No. 22-5239, 2026 WL 1008171 (E.D. Pa. Apr. 14, 2026)........................................ 14

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)........................ 15

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022)....................................................................... 17

*Taino v. Bow Tie Cinemas*,
No. 23-CV-5371 (VSB), 2025 WL 2652730 (S.D.N.Y. Sept. 16, 2025)...................... 9

*Taylor v. Converse Now Techs., Inc.*,
No. 25-CV-00990-SI, 2025 WL 2308483 (N.D. Cal. Aug. 11, 2025)........................ 11

*Teresa Turner v. Nat'l Notary Ass'n*,
No. CV 25-0334 FMO (PDx), 2026 WL 947171 (C.D. Cal. Mar. 27, 2026) ....... 4, 6, 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).................................................................................................... 3

*Turner v. Nuance Commc'ns*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ..................................................................... 11

*Vishal Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)....................................................................... 16

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024)............. 14

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .................... 11

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .................... 11

*Yoon v. Lululemon U.S.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................... 12

**Statutes**

18 U.S.C. § 2710(a)(1) .................... 7

18 U.S.C. § 2710(a)(3) .................... 8

18 U.S.C. § 2710(a)(4) .................... 6

18 U.S.C. § 2710(b) .................... 5

18 U.S.C. § 2710(b)(2)(B)(i) .................... 3

Cal. Bus. & Prof. Code § 17200 .................... 17

CIPA § 631 .................... 9, 12

CIPA § 631(a) .................... 10, 14

Federal Wiretap Act § 2511 .................... 13

Federal Wiretap Act § 2511(2)(d) .................... 13

**Other Authorities**

Black's Law Dictionary Fifth Edition (1977) .................... 6

Plaintiffs Andrew Cheung and Nina Harris ("Plaintiffs") submit this response to Slickdeals, LLC's motion to dismiss (the "Motion" or "MTD") Plaintiffs' class action complaint (the "Complaint") (ECF No. 1).

## INTRODUCTION

Slickdeals ("Defendant") operates an online platform that serves as a community-driven hub for sharing and discovering coupons and discounts for consumer products. Through its website, slickdeals.net (the "Website"), Plaintiffs browsed deal listings and made purchases via links to third-party retailers, including video game purchases ( Plaintiff Cheung).

The Website begins placing and transmitting third-party tracking technologies immediately upon a user's initial visit to the Website, before users receive any meaningful notice or opportunity to control the interception or dissemination of their personal and video purchasing data. For Plaintiffs, this data also included detailed URLs of pages visited, information entered into search fields, and titles of video games added to carts and purchased, all linked to information capable of directly and personally identifying Plaintiffs (their "Private Information"). This Private Information was disclosed to third-party advertising and analytics providers, including Meta Platforms, Inc. ("Meta") (the "Tracking Entities"), without Plaintiffs' consent. This conduct gives rise to the violations alleged in the Complaint.

Defendant's Motion neither accounts for a host of recent decisions recognizing Article III standing in similar circumstances, nor attempts to distinguish the facts here from that authority. With Plaintiffs' standing satisfied, Defendant's remaining Rule 12(b)(6) arguments fall apart.

Indeed, Defendant's procurement and deployment of advanced tracking software (the "Tracking Tools") on the Website to intercept and disclose Plaintiffs' Private Information constitutes conduct that falls within the prohibitions of the Wiretap Act, the VPPA, and California privacy law. Defendant's attempt to recast this action as just another effort to capitalize on the "explosion of national pixel tracking class action

lawsuits" alleging "a string of hypothetical acts and corresponding theoretical harms" cannot obscure that responsibility for this conduct lies squarely with Defendant. Accordingly, Defendant's Motion should be denied.

## FACTUAL BACKGROUND

Retailers pay Slickdeals a fee to boost their posts and deals on the Slickdeals Website.[1] ¶ 128. When a consumer clicks a link, they are directed to a third-party retailer to complete the purchase. ¶¶ 131, 163. When the consumer completes the purchase, Slickdeals earns a portion of that purchase as a commission. ¶¶ 18, 126-130, 163.

The Tracking Tools embedded on the Website operate through first- and third-party tracking cookies and related technologies to identify users and tie their browsing and purchase interests to their individual identities, ***even*** if they make a purchase on a subsequent retailer's website. ¶¶ 4, 33–34, 133, Fig. 12-15.

The tracking cookies at issue here include: the c_user cookie (Meta), which identifies Facebook users by their unique Facebook ID; the NID cookie (Google), which stores user preferences and enables cross-site tracking tied to Google accounts; and the loid cookie (Reddit), which identifies logged-in and logged-out Reddit users across third-party websites. ¶¶ 3, 55-56, 79, 93. Again, these tracking cookies are tied to users' accounts and persistent identifiers, rendering the transmitted data personally identifiable. ¶¶ 3-4, 17, 55-56. 125, 161, 166-67.

The Tracking Tools, and their applicable cookies, were activated the moment Plaintiffs arrived on the Website, ***before*** they had a chance to acknowledge and/or consent to Defendant's data sharing or collection practices.[2] Moreover, Defendant's disclosure of Plaintiff Cheung's video-related data is untethered to the VPPA's strict consent requirements, which mandate that consent be "informed" and "written," and obtained in

[1] "¶" refers to Plaintiffs' Complaint (ECF. No. 1).

[2] After the filing of this action, the Website added a cookie banner that represents that it allows users to disable non-necessary cookies and reject the sale or sharing of their personal information.

a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i).

**LEGAL STANDARD**

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Examples of concrete but intangible harms include "reputational harms, ***disclosure of private information***, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (emphasis added).

The Ninth Circuit has held that "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019). It follows that the unauthorized tracking and disclosure of personal information satisfies Article III's concreteness requirement. *In re Facebook Inc. Internet Tracking Litig.,* 956 F.3d 589, 599 (9th Cir. 2020); *see also Patel*, 932 F.3d at 1272 (holding that statutes like CIPA codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing).

**ARGUMENT**

**I. Plaintiffs Have Suffered a Concrete Injury to Establish Article III Standing**

Courts in this District continue to hold that plaintiffs establish Article III standing where a defendant deprives them of control over their personal information and online activity through the use of Tracking Tools without their consent. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 599 (holding defendant's tracking and collection practices would cause harm or a material risk of harm to plaintiffs' interest in controlling their personal information); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 866 (N.D. Cal. 2025) (finding standing where plaintiff alleged defendant disregarded data tracking and sharing preferences, and, via tracking tools, then proceeded to collect and share plaintiff's browsing history with third parties); *see also Teresa Turner v. Nat'l Notary*

*Ass'n*, No. CV 25-0334 FMO (PDx), 2026 WL 947171, at *3 (C.D. Cal. Mar. 27, 2026) (finding Article III standing when plaintiff alleged a VPPA violation); *Plotsker v. Envato Pty Ltd.*, No. 2:24-cv-04412-MEMF-RAO, 2025 WL 2481422, at *5 (C.D. Cal. Aug. 26, 2025) (same).[3]

Plaintiffs' allegations align with these authorities. Here, as in those cases, Plaintiffs allege Defendant procured the Tracking Entities and their Tracking Tools (¶¶ 3, 39, 51, 98, 115, 188, 200) to place tracking and identifying cookies on Plaintiffs' devices (¶¶ 3, 53-54, 111-112). These tracking cookies intercepted and shared their Private Information (¶¶ 4, 16-17, 40, 57, 98, 111-112), including browsing activity, the titles of video games purchased, as well as other items purchased through Slickdeals (¶¶ 6, 35-37, 57, 111), through Tracking Tools capable of personally identifying them (¶¶ 3-4. 53-54, 125, 161, 166-67), and without their consent (¶¶ 5-6, 12, 14, 104, 106, 117. 120-125, 134). Defendant and the Tracking Entities then used the insights derived from Plaintiffs' Private Information for marketing and targeting advertising purposes, enhancing their bottom line. ¶¶ 51-52, 59, 75, 86, 99.

Defendant's standing arguments fall short. Each relies on out-of-circuit authority that either is readily distinguishable or turns on pleading deficiencies. *See, e.g., Campos v. TJX Co.*, No. 24-cv-11067-ADB, 2025 WL 360677, at *3 (D. Mass. Jan. 31, 2025) (plaintiff failed to plead how the statutory violation equated to a traditionally actionable harm under common law); *Gabrielli v. Insider, Inc.*, No. 24-cv-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) (plaintiff failed to plead invasion of privacy where only his IP address was disclosed); *In re BPS Direct, LLC*, MDL 3074, 2023 WL 8458245, (E.D. Pa. Dec. 5, 2023) (plaintiff failed to plead the personal information captured); *Baysal v. Midvale Indem. Co.*, 78 F.4th 976 (7th Cir. 2023), *reh'g denied*, No. 22-1892,

---

[3] "[W]hen a court is faced with a factual attack on standing pursuant to Rule 12(b)(1), the court must leave the resolution of material factual disputes to the trier of fact when the issue of standing is intertwined with an element of the merits of the plaintiff's claim." *Turner*, 2026 WL 947171, at *3.

2023 WL 6144390 (7th Cir. Sept. 20, 2023) (failed to plead intrusion on seclusion). By contrast, Plaintiff's Complaint suffers from none of the pleading deficiencies identified in Defendant's cases. The traditionally actionable common law harm is the unauthorized disclosure of Plaintiffs' Private Information without consent, which also violates the VPPA. The Private Information disclosed extended well beyond mere IP addresses and was personally identifiable.

Furthermore, Defendant's ancillary argument that "Plaintiffs' damages allegations are not traceable to their use of Slickdeals' website, as Slickdeals' website directs users to external links to complete purchases" (MTD at 5-6) is a red herring and unsupported by any relevant authority. Here, the damages stem from the Tracking Tools procured and installed on the Website, permitting the Tracking Tools and Tracking Entities to intercept and disclose Plaintiffs' Private Information. These damages are distinct from any subsequent browsing by Plaintiffs on other websites, which may be separately liable for similar violations. Accordingly, Plaintiffs have established Article III standing.

## II. Plaintiff Cheung Pleads a Claim Under the VPPA

To state a claim under the VPPA, a plaintiff must allege (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by another part of the statute. 18 U.S.C. § 2710(b).

Here, Plaintiffs' allegations meet all the statutory requirements. Defendant is a Video Tape Service Provider ("VTSP") because it is engaged in the business of the sale and delivery of audio-visual materials ("Video Products"). ¶¶ 126-30, 162-63. Indeed, Defendant earns a commission every time a consumer purchases Video Products through its Website, which is specifically tailored to provide such products to consumers. ¶¶ 126-30, 162-63. Defendant knowingly disclosed, via the Meta Pixel, the titles of Plaintiff Cheung's video game purchases linked to his personal identifier, his Facebook ID ("FID"), to Meta. ¶¶ 51-53, 55-56, 59, 61, 131-33, 166-67. Although the final purchase was completed on a third-party retailer's website, the title of the video game purchased

was nonetheless disclosed to Meta through a transmission ***originating from Defendant's own Website.*** ¶¶ 133, 166-67, *Figs. 14, 15*.

**A. Slickdeals is a VTSP**

A VTSP means "any person, engaged in the business . . . of sale[] or delivery of pre-recorded. . . audio visual materials . . . ." § 2710(a)(4). The VPPA does not define "engage" or "business."[4] Black's Law Dictionary Fifth Edition (1977) defines "engage" as "to employ or involve oneself; to take part in; to embark on." Black's Law defines "business" as "[e]mployment, occupation, profession, or commercial activity engaged in for gain or livelihood." The plain meaning of "business" allows multiple defendants to be engaged in the business of selling the same video content. *See generally In re Vizio, Inc.,* 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017). Nothing in the statute requires that video-related activity be a defendant's primary business.

Courts have found an entity is a VTSP for *delivery* purposes where it is "significantly tailored to serve [the] purpose" of engaging in the sale, rental, or delivery of video content." *In re Vizio, Inc.,* 238 F. Supp. 3d at 1221-22 (finding smart TV manufacturer qualified as a VTSP by allowing delivery of video via third-party streaming apps on TV products). This analysis is unnecessary, however, when dealing with *sales* as opposed to delivery. *See Turner,* 2026 WL 947171, at *12 (rejecting a need to determine whether defendant was "primarily" engaged in the business of selling audio-visual materials, because the "primary" analysis was limited to allegations of defendant *delivering* video).

Here, Slickdeals qualifies as a VTSP because it involved itself and took part in the commercial activity of selling Video Products for profit. *See* ¶¶ 130-31. Indeed,

---

[4] "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Bondi v. Vanderstok*, 604 U.S. 458, 497 (2025) (quoting *Food Mktg Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019)). The plain meaning of a statute controls if it does not lead to absurd or impracticable consequences. *Seattle-First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1197 (9th Cir. 1996).

Defendant concedes in its Motion that the Website features Video Products. *See* MTD at 7.[5] Critically, Slickdeals' revenue is tied to funneling consumer purchases to retailers, including purchases of Video Products. *See* ¶¶ 127-28, 163[6]; *see also Christopherson v. Cinema Ent. Corp.,* 161 F.4th 525, 529 (8th Cir. 2025) (finding that a business is "engaged in the business" of the sale or delivery of audio-visual materials when it provides them for "livelihood or gain"). Defendant's active participation in the user purchase journey and its receipt of commission-based compensation upon the completion of those sales place Defendant squarely within the meaning of "engaged in the business" of selling audio-visual materials. ¶¶ 126-130, 162-163.

Moreover, Defendant's contention that "Slickdeals could still conduct its business without hosting any 'deals' for video content" (MTD at 8) misses the point. Slickdeals' choice to participate in the process of selling Video Products is dispositive. *See Turner*, 2026 WL 947171, at *12 (finding it irrelevant that audio-visual materials were less than 10% of the Defendant's sales). Therefore, Plaintiffs have established that Slickdeals is a VTSP.

**B. Plaintiff Cheung is a "Consumer" under the VPPA**

Under the VPPA, a "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." § 2710(a)(1). Plaintiff Cheung qualifies as a consumer under the VPPA for two independent and sufficient reasons: (1) Defendant alerted Plaintiff Cheung to deals in Video Products, after which Plaintiff

---

[5] Defendant highlights movie and video game deals in its "Featured Deal Categories," where consumers are presented with curated deals in a manner functionally indistinguishable from a traditional retailer's storefront. *See* ¶¶ 2, 44, 126.

[6] This is reinforced by reporting in *Slickdeals Seeks 'Up-Funnel' Action*, Grace Harmon, Jan. 15, 2024, which reported CEO Neville Crawley's admission that Slickdeals "leads consumers to make purchases" by stepping "in at the beginning of a consumer's purchase journey to help them find a deal on a product they had not previously discovered or had not initially set out to purchase" which is "really valuable to merchants because they get customers they wouldn't have normally had, or can get them to try something new." It also reported Elizabeth Simer, Chief Technology Officer, as highlighting Slickdeals' offer of an aggregated location to streamline the purchase process as a benefit to retailers.

Cheung made purchases and Defendant received compensation for these purchases (*see* ¶¶ 17, 126-28); and (2) Plaintiff Cheung provided his information to create an account on Slickdeals. *See* ¶¶ 17, 164; *see also Ballard v. Insomniac Holdings, LLC,* No. 25-cv-00811-SI*,* 2025 WL 1696558, at *5 (N.D. Cal. June 17, 2025) (holding the exchange of an email for newsletter subscription qualified as subscription under VPPA); *see also Chandra v. Prager Univ. Found*., No. 2:25-cv-03984-MCS-SK, 2025 WL 3049870, at *3 (C.D. Cal. Oct. 21, 2025) (same).

Defendant first argues that Plaintiff Cheung is not a purchaser because he does not purchase video content directly from Slickdeals. However, this runs contrary to admissions by Slickdeals' own executives (*see supra*, Section II(A)) regarding its participation in the sales process and the "up-funnel" service it provides to drive purchases. In essence, Defendant revisits the theory in *In re Vizio, Inc.* that only one defendant can be the seller/deliverer for any transaction, a theory rejected outright. 238 F. Supp. 3d at 1222 (finding "such a limitation is found nowhere in the text of the statute" and "fails to give the phrase 'engaged in the business . . . of' any real meaning"). Furthermore, Defendant's argument that Plaintiff Cheung is not a consumer because an account is not required to take advantage of deals on the platform is meritless. It is not necessary that the account provide access to audio-visual material. *See Ballard,* 2025 WL 1696558, at *5 (finding that signing up for a newsletter made the [p]laintiff a consumer); *Chandra,* 2025 WL 3049870, at *3 (finding that [p]laintiffs were consumers when they had an account and watched free videos); *Jackson v. Fandom, Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (same); *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012) (same). Therefore, Plaintiff Cheung is a consumer under the VPPA.

**C. The Disclosed Private Information Constitutes PII Under the VPPA**

"Personally identifiable information" under the VPPA "includes information which identifies a person as having requested or obtained specific video materials or services from a videotape service provider." § 2710(a)(3).

Here, Plaintiff Cheung alleges that when he purchased Video Products, his personal identifiers, including his FID, were linked to the titles of his purchases, which in turn were disclosed to the Tracking Entities, including Meta, via the Tracking Tools installed on the Website.[7] This is sufficient to plead disclosure of PII. *See Archer v. NBCUniversal Media, LLC*, No. 2:24-CV-10744-AB-JC, 2025 U.S. Dist. LEXIS 129598, at *14-15 (C.D. Cal. July 2, 2025) (holding the FID satisfies the personal identifier requirement under the VPPA); *see also Plotsker*, 2025 WL 2481422, at *14 (similar).

Defendant's reliance on *Taino v. Bow Tie Cinemas*, No. 23-CV-5371 (VSB), 2025 WL 2652730 (S.D.N.Y. Sept. 16, 2025), is unavailing. The court in *Taino* was bound by Second Circuit precedent that other courts in this Circuit have found unpersuasive. *See Chandra v. Prager Univ. Found.*, No. 2:25-cv-03984-MCS-SK, 2026 U.S. Dist. LEXIS 33002, at *9 (C.D. Cal. Jan. 27, 2026) ("courts in this circuit have uniformly declined to follow *Solomon's* application of the ordinary person test"). Moreover, the court in *Chandra* highlighted factual distinctions that apply here, primarily that screenshots depicting the transmission of PII were not interspersed with UTF-8 encoding characters such as percentage signs, numbers, and letters. *Id.*; *see also* ¶¶ 30-32 (noting relationship between URL encoded and decoded data); ¶¶ 33-34 (depicting product page, encoded transmission in "header," and decoded transmission in "payload"). While Plaintiffs provided the "headers" as exemplars for each of the transmissions, the "uncluttered" data was always available through the "payload," which qualifies for the same distinctions found in *Chanda.* For this reason, and the reasons above, Plaintiff Cheung pleads a violation of the VPPA.

## III. Plaintiffs Plead a Violation of CIPA § 631

When a user visits Defendant's website, their interactions are captured and transmitted to third parties in real time through embedded tracking code, including the Meta Pixel. These transmissions occur contemporaneously with the user's activity, before

[7] *See, supra,* Section II.

any meaningful opportunity to grant or withhold consent. CIPA § 631 imposes liability on any person who, "by means of any machine, instrument, contrivance, or in any other manner," (1) intentionally taps a wire, line, cable, or instrument; (2) willfully attempts to read or learn the contents or meaning of any communication while in transit; (3) uses or attempts to use any information so obtained; or (4) aids, agrees with, employs, or conspires with any person to unlawfully do, or cause to be done, any of the acts mentioned in the section. Cal. Penal Code § 631(a).

Here, Plaintiffs allege that Defendant procured the Tracking Entities to, without the consent of all parties to the communication, read and learn the contents of Plaintiffs' Private Information while in transit to and from Defendant. ¶¶ 112-13, 115, 197-198, 200. Defendant and the Tracking Entities subsequently used this intercepted Private Information to build marketing profiles of the Website's users. ¶¶ 51, 118, 91, 219-220. Thus, Plaintiffs' allegations are sufficient to state a claim under CIPA § 631(a). *See Gianne v. Accor Mgmt. US Inc.*, No. CV 25-2425-DMG (Ex), 2026 WL 925522, at *6 (C.D. Cal. Mar. 31, 2026) (finding a violation of the fourth prong of CIPA when Defendant "assisted or encouraged the conduct by installing the trackers on the Website")*; see also Heerde v. Learfield Commc'ns, LLC,* 741 F. Supp. 3d 849, 861 (C.D. Cal. 2024) (similar). All of Defendant's arguments to the contrary are unavailing.

Defendant's leading argument that it and, by extension, the Tracking Tools escape liability because they are parties to the communication is not supported by the facts here. As the court explained in *Javier v. Assur. IQ LLC*, whether the Tracking Entities constitute a third-party eavesdropper turns on whether the Tracking Entities have the capability to use the communications for any purpose other than providing those communications to Defendant. 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (finding the party exception inapplicable because plaintiff alleged that the trackers ***could use*** intercepted communications for purposes ***beyond benefitting the website owner***) (emphasis added). Courts in this Circuit continue to fall in line with such reasoning. *See Taylor v. Converse Now Techs., Inc.*, No. 25-CV-00990-SI, 2025 WL 2308483, at *4

(N.D. Cal. Aug. 11, 2025) (holding tracking technology constitutes a third-party eavesdropper where it uses collected information to improve its own product); *Turner v. Nuance Commc'ns*, 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024) (same); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) (same).

Defendant's older authorities are distinguishable for the same reason. *See, e.g., Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) (finding session replay software at issue was a party to the communication because it merely allowed the defendant to analyze collected data internally, and expressly distinguishing entities like Meta, which is capable of using data for other purposes); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) (distinguishing on similar grounds); *Byars v. HotTopic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) (same). Here, the Tracking Entities captured, transmitted, and ***actually used*** Plaintiffs' Private Information in real time for analytical and targeted advertising purposes, rather than merely recording it for Defendant's sole use. *See* ¶¶ 3, 18, 112, 186.

Defendant's remaining arguments are without merit and ignore Plaintiffs' allegations entirely. *First*, Defendant's argument that Plaintiffs were required to allege "the contents of any protected communication" and, in effect, plead "specifics about the contents of their browsing data" (MTD at 13) is easily dispelled. *See* ¶¶ 110-11 (Defendant shared ***names of products viewed and purchased*** via path and query string); *see also* ¶¶ 27, 115 (Tracking Tools intercepted ***request URLs that contain the path of the webpage and specify content users accessed on webpages***); ¶¶ 5-6, 16-17, 132 (Plaintiffs viewed and purchased specific products from the Website). These are the "contents of the communication." *See Gabrielli,* 815 F. Supp. 3d at 871 (distinguishing *Mikulsky v. Bloomingdale's, LLC,* 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) and holding user input data, such as search queries, search terms and descriptive URLs are "contents"); *see also Krzyzek v. Openx Techs., Inc.*, No. 25-cv-05588-SI, WL 206855, at

*6 (N.D. Cal. Jan. 27, 2026) ("URLs can also reveal website users' personal interests, queries, and habits, particularly when aggregated into comprehensive user profiles").[8]

*Second*, Defendant's argument that Plaintiffs do not plausibly allege interception "while in transit" (MTD at 14) also fails. Indeed, Plaintiffs allege that the Tracking Tools "begin intercepting information . . . ***as soon as the Tracking Tools load onto users' browsers"*** and "send information to the Tracking Tools ***contemporaneously*** with users" submitting information "via their browsers." ¶ 112; ¶ 57 (noting data is sent to Meta automatically when users click pre-designated buttons, visit webpages, and view products); *see also Heerde*, 741 F. Supp. 3d at 862 (advancing CIPA 631 claim where "plaintiffs allege that, after they entered their [s]earch Terms, the [s]earch [t]erms were replicated and sent in parallel to the tracking entities"). Accordingly, the "in transit" requirement is clearly established. Regardless, Defendant's argument raises fact-intensive questions inappropriate for resolution on a motion to dismiss. *See D'Angelo v. Penny Opco, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("…a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder").[9] Accordingly, Plaintiffs plead a violation of CIPA § 631.

---

[8] Defendant again relies on a host of session-replay cases, all of which are distinguishable based on their comparatively narrow recording capabilities and the plaintiffs' failure to plead that anything more than button or mouse clicks — or basic record information such as addresses, telephone numbers, email addresses, or zip codes — was captured. *See Mikulsky,* 713 F. Supp. 3d at 845 (session replay software, plaintiffs only pled "button clicks"); *Yoon v. Lululemon U.S.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) (same); *see also King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-CV-01119-DC-CKD, 2025 WL 1635419 (E.D. Cal. June 9, 2025) (only "record information").

[9] Distinguishing Defendant's cases: *See Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-08002-SPG-E, 2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) (involving different technology that first stored and then transferred the data); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) (same); *Barbour v. John*

### IV. Plaintiffs Plead a Violation of The Federal Wiretap Act

Similarly to CIPA § 631, the Federal Wiretap Act requires a showing that Defendant (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. § 2511. And for similar reasons as outlined in Section III, Plaintiffs satisfy all the statutory requirements. Indeed, Defendant does not challenge whether Plaintiffs have satisfied the elements of their ECPA claim. Instead, Defendant hangs its hat on the "party defense" under the Federal Wiretap Act § 2511(2)(d), arguing that it qualifies as a party to the communications at issue. It does not.

*First*, the "party defense" shields only direct interceptors, not procurers. *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 925-926 (D. Minn. 2024) (stating an "an interceptor and the procurer/user of an interception are conceptually and legally distinct" and that "the statute's plain language appears to support the interpretation that the party exception was drafted with active interceptors foremost in mind"); *see also Q.J., v. Powerschool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *11, n.3 (N.D. Ill. Aug. 20, 2025) (noting open questions as to whether § 2511(2)(d)'s statutory language protect procurers).[10] Here, Plaintiffs distinguish Defendant's role as a procurer from that of a direct interceptor. *See* ¶¶ 3, 7, 18, 115.

*Second*, even if the Court were to find the "party defense" applicable here, the statute's crime-tort exception still renders Defendant liable. Defendant procured and installed the Tracking Tools for the purpose of disclosing users' data to the Tracking Entities, violating the VPPA and Plaintiffs' privacy. *See Dawson v. Univ. of Phx., Inc.*, No. 1:25-cv-03497, 2026 WL 92248, at *3 (N.D. Ill. Jan. 13, 2026) (finding the crime-tort exception applies when the disclosure violated the VPPA); *Allison v. PHH Mortg.*, No. 25-CV-05323-RFL, 2026 WL 899438, at *11 (N.D. Cal. Mar. 27, 2026) (holding

---

*Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super., Contra Costa Cty. Jan. 5, 2023) (plaintiff did not properly plead how the Meta Pixel worked).

allegations that defendant installed trackers on its website to track customers' sensitive information to reduce the cost of marketing sufficed "to allege a purpose to invade privacy for [defendant's] profit, which triggers the crime-tort exception"); *Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 WL 1162828 (N.D. Cal. Apr. 29, 2026) (finding intrusion upon seclusion when Defendant used trackers to build individual profiles on the Plaintiff). Moreover, being primarily motivated by profit does not disqualify the crime-tort exception. *See Riganian v. LiveRamp Holdings, Inc.,* 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) ("The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose."); *see also Krzyzek*, 2026 WL 206855, at *8 (similar).

Additionally, Defendant's procurement of the Tracking Entities caused the interception of the contents of Plaintiffs' communications in violation of the second prong of CIPA § 631(a), which prohibits any person who "willfully and without the consent of all parties to the communication . . . reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Defendant's ***subsequent use*** of that information for marketing and analytics purposes constituted a ***separate and independent*** violation of the third prong of CIPA § 631(a), which prohibits any person who "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." For purposes of the crime-tort exception, this subsequent use constitutes a distinct criminal and tortious act from the initial interception. *See Smart v. Main Line Health*, No. 22-5239, 2026 WL 1008171, at *3 (E.D. Pa. Apr. 14, 2026) (recognizing that the use of intercepted communications is distinct from their capture).

Defendant's authority in support of its position does not hold sway. The majority involve instances where the plaintiff failed to establish the underlying predicate tort. *See, e.g., Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) (distinguishing on this ground); *In re Google Inc.*, 806 F.3d 125, 145 (3rd

Cir. 2015) (same); *Martinez v. Mentavi, Inc.*, No. 1:25-cv-228, 2025 WL 3780427 (W.D. Mich. Oct. 9, 2025) (same). Moreover, the court's holding in *Roe v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) on this issue has been rejected by a slew of other courts.[11] In contrast, Plaintiffs allege that Slickdeals disclosed the gathered information to the Tracking Entities in violation of the VPPA, and that this information was used to build personal profiles of the Plaintiffs, intruding on their privacy. *See* ¶¶ 4, 60, 91, 118, 133, 166-67. Accordingly, Plaintiffs establish a claim under the Federal Wiretap Act.

## V. Plaintiffs Plead a Claim Under CIPA § 638.51

A host of California courts have found tracking technology, similar in functionality and capability to the Tracking Tools alleged here, constitutes a "pen register" and/or "trap and trace devices." *See Casillas v. Six Flags Ent. Corp.,* 812 F. Supp. 3d 1016 (C.D. Cal. 2025) (finding Pinterest Tag, Criteo, and Claritas trackers to be trap and trace devices); *Gabrielli*, 2025 WL 2494368, at *1033 (Google, Microsoft, and other trackers are pen registers or trap and trace devices); *Krzyzek*, 2026 WL 206855, at *9 (OpenX pixel is a pen register).[12] In assessing what constitutes a "pen register," courts "should focus less

[11] *See Doe v. Tenet Healthcare Corporation*, 789 F. Supp.3d 814, 850 (E.D. Cal. 2025) (rejecting *Roe*); *Krzyzek*, 2026 WL 206855 (same); *Semien v. PubMatic Inc.*, No. 25-cv-03164-SI, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) (same); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) (same); *R.S. v. Prime Healthcare Servs.*, No 5:24-cv-00330-ODW (SPx), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) (same); *Hannant v. Culbertson Memorial Hospital Foundation*, No. 4:24-cv-04164-SLD-RLH, 2026 WL 777296 C.D. Ill. Mar. 19, 2026) (same).

[12] A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." § 638.50(b). A "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c). The Tracking Tools fit both definitions: they were placed on Plaintiffs' devices and captured outgoing routing and addressing information when Plaintiffs communicated with the Website. ¶¶ 4, 102, 103.

on the form of the data collector and more on the result." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

Defendant's arguments to the contrary have been repeatedly rejected. Whether IP addresses are routinely provided to website operators and therefore fall outside the statute, or whether Plaintiffs' voluntary transmission of their IP addresses eliminated any reasonable expectation of privacy, the result is the same. *See Casillas*, 812 F. Supp. 3d at 1033 (finding liability, and placing the focus on the fact that defendant designed its website to include third-party programming scripts that enabled those parties to place tracking technologies on visitors' browsers and devices, transmit cookies along with user data in real time, and collect browsing history, website interactions, user input data, device information, and geolocation data, among other categories of sensitive information); *see also Vishal Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) (holding that consent to disclose an IP address to a website operator does not constitute consent to disclosure via embedded third-party trackers). On this point, Defendant collects several out of circuit and inapposite cases[13], involving general expectations of privacy in IP addresses, with no references to or involvement with CIPA, and therefore do not stand up to the widening consensus of federal courts in this Circuit reaching the opposite conclusion. *Rodriguez v. Plivo Inc.,* No.24STCV08972, 2024 WL 5184413, at *2 (Cal. Super., L.A. Cty. Oct. 2, 2024), the only case Defendant cites, which involves CIPA, is an isolated state court decision that has not been followed by federal courts in this Circuit. *See Mirmalek v. Los Angeles Times Communs. LLC,* No. 24-cv-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) (finding online tracking tools to be pen registers); *see also Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399, at *5 (N.D. Cal. Oct. 29, 2025) (same).

---

[13] *In re Application of the U.S.*, 830 F. Supp. 2d 114, 120 (E.D. Va. 2011) (No CIPA Claim); *United States v. Kidd,* 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) (same); *Smith v. Md.*, 442 U.S. 735, 743–44 (1979); *United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017) (same).

## VI. Plaintiffs Plead a Claim under the UCL

The UCL broadly prohibits unlawful, unfair, and fraudulent business acts. Cal. Bus. & Prof. Code § 17200; *see also Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022). "Unlawful acts are anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* Here, Plaintiffs' UCL claim is properly based on Defendant's violations of the regulations and laws put forth in their Complaint. *See* ¶¶ 133, 155-71 (Defendant violated the VPPA); ¶¶ 172-91 (the ECPA); ¶¶ 192-214 (CIPA). Accordingly, each of Defendant's arguments to the contrary fails.

### A. Plaintiffs have Standing Under the UCL

Courts have held that privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL. *See In re TikTok, Inc.,* No. MDL 3144-GW-RAOx, 2025 WL 3628598, at *20 (C.D. Cal. Nov. 5, 2025), adopted sub nom. *In re TikTok, Inc.,* No. MDL 3144-GW-RAOx, 2025 WL 3628448 (C.D. Cal. Nov. 6, 2025) (finding UCL standing where personal information shared without the user's permission suffers diminished value, both to its owner and in the marketplace); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024) (any time a user transacts with a business and the user's expectations regarding the user's personal data are not met as a result of conduct alleged to violate the UCL, the user can establish standing).

Here, Plaintiffs visited the Website reasonably expecting that Defendant would collect and share their data only as disclosed. *See* ¶¶ 5, 6, 16, 17 (had Plaintiff Cheung known that Defendant was in fact collecting and sharing data in the manner alleged, he would not have visited the Website); ¶¶ 16, 17 (they received less and surrendered more than the transaction he believed he was entering); ¶ 227 (Defendant's unauthorized sharing of Plaintiffs' personal data with the Tracking Entities without his knowledge or consent diminished the value of that data); ¶¶ 226, 227 (Plaintiffs' personal information had independent market value and Defendant's conduct deprived them of control over it

and reduced what they could otherwise demand for its use). For these reasons, Plaintiffs have established standing.

**B. Defendant's Conduct is Unlawful Under the UCL**

Plaintiffs' claims are unlawful under the UCL because Plaintiffs successfully plead that Defendant violated other laws. *See supra*; *see also Cappello v. Walmart Inc.,* 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) ("By alleging that Walmart shared [p]laintiffs' and class members' video media purchase information with Facebook for direct marketing, [p]laintiffs adequately pleaded a violation of Section 22576, which is sufficient to state a UCL claim under the unlawful prong."); *In re Zoom Video Communs Priv. Litig.*, 525 F. Supp. 3d 1017, 1047 (N.D. Cal. 2021) (allowing plaintiff to maintain its UCL claim under the unlawful prong where "a predicate violation of law supports Plaintiffs' claim."); *Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 886 (N.D. Cal. 2025) (same). Accordingly, Plaintiffs plead a violation under the UCL.

**VII. Plaintiffs Plead Unjust Enrichment**

To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Applying this principle, California Courts have permitted unjust enrichment claims where a plaintiff alleges an entitlement to defendant's profits derived from users' personal data. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 600; *see also Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *8 (N.D. Cal. Nov. 24, 2025) (advancing unjust enrichment claim where plaintiff alleges Defendants "misrepresent[ed] its data sharing practices and then transmitted cookies and collected his Private Communications "to boost website performance and revenue," including through advertising); *Gabrielli*, 815 F. Supp. 3d at 875 ("Courts in this District have regularly held that even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized from its allegedly improper conduct). Here is no different.

Plaintiffs may bring an unjust enrichment claim because they also allege that Defendant benefited from using their Private Information, without their consent, to enhance revenue through advertising, and that otherwise their remedies at law are inadequate. *See* ¶¶ 51, 52, 75, 99, 118 (describing ways in which Defendant benefited from the use of cookies); ¶ 154 (alleging no adequate remedy at law). This is sufficient. *See A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain were sufficient to plead unjust enrichment).

The data breach cases Defendant relies on are inapposite.[14] In those cases, the defendants derived no monetary benefit from the plaintiff's data beyond the initial payment for their service. Here, Defendant did not merely profit from Plaintiffs' purchases through affiliate commissions; it also exploited Plaintiffs' Private Information to enhance targeted advertising revenue for itself and the Tracking Entities, generating an additional layer of financial benefit that Plaintiffs never contemplated and never consented to. Accordingly, Plaintiffs successfully plead a claim for unjust enrichment.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. Should the Court grant Defendant's Motion (which it should not), Plaintiffs respectfully request leave to amend. *See Roney v. Miller*, 705 F. Appx. 670, 671 (9th Cir. 2017) (holding leave to amend should be freely granted). Here, the amendment would not be futile. Given the

[14] *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064 (C.D. Ill. 2016) (data breach); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231 (D. Colo. 2018) (same); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749 (C.D. Ill. 2020) (same, and applying Illinois law). Defendant's reliance on *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) is also misplaced. That case turned on whether the plaintiffs were in privity with Oracle, which occupied the role of the third-party tracking entity, not the host website operator. Here, by contrast, Defendant is the host website operator, and it is Defendant's own deployment and use of the Tracking Tools that form the basis of Plaintiffs' claims.

highly technical nature of the Tracking Tools at issue in this action, Plaintiffs could provide additional details related to Defendant's procurement, deployment, and use of the Tracking Tools.

DATED: May 4, 2026

Respectfully submitted,

*/s/ Christopher V. DeVivo*
Christopher V. DeVivo*
cdevivo@zlk.com
Michael N. Pollack*
mpollack@zlk.com
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Yufei Wang (SBN 346170)
ywang@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, May 4, 2026, I filed the foregoing Plaintiffs' Opposition to Defendant's Motion to Dismiss with the Court using the CM/ECF system. Notice of this filing will be sent automatically by the CM/ECF system to all counsel of record.

*/s/ Christopher V. DeVivo*
Christopher V. DeVivo

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Andrew Cheung and Nina Harris, certifies that this brief contains 6,752 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 4, 2026

*/s/ Christopher V. DeVivo*
Christopher V. DeVivo