UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

Present: The Honorable          CHRISTINA A. SNYDER

| Catherine Jeang | Maria Bustillos | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Christopher DeVivo | Sherief Morsy |
| Theodore Maya | Justin Holmes |

**Proceedings:**     ZOOM HEARING RE: DEFENDANT'S MOTION TO DISMISS (Dkt. 32, filed on April 6, 2026)

## I.     INTRODUCTION

On January 16, 2026, plaintiffs Andrew Cheung and Nina Harris ("plaintiffs"), individually and on behalf of others similarly situated, filed a class action complaint against defendant Slickdeals, LLC ("defendant" or "Slickdeals"). Dkt. 1 ("Compl."). Plaintiffs assert six claims for relief: (1) violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.*; (2) violation of the Federal Wiretap Act as amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2510, *et seq.*; (3) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (4) violation of CIPA, Cal. Penal Code § 638.51; (5) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (6) unjust enrichment. Id. ¶¶ 155-228.

On April 6, 2026, defendant filed the instant motion to dismiss for lack of standing and failure to state a claim. Dkt. 32 ("Mot."). On May 4, 2026, plaintiff filed an opposition. Dkt. 33 ("Opp."). On May 18, 2026, defendant filed a reply. Dkt. 34 ("Reply").

On June 29, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | | Date | June 29, 2026 |
|---|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | | |

## II.    BACKGROUND

### A.    The Parties

Plaintiffs allege that defendant is a Delaware limited liability company headquartered in Las Vegas, Nevada. Compl. ¶ 18. Plaintiffs allege that defendant owns and operates a website located at https://www.slickdeals.net and https://www.slickdeals.com (collectively, the "Website"), which is a popular deal-aggregation and consumer-discovery platform that allows users to browse, search for, and engage with curated and user-submitted deals, discounts, and promotions across a wide range of products and services. Id. Plaintiffs further allege that defendant generates revenue by monetizing user engagement on the Website through advertising, affiliate marketing, analytics, and related data-driven technologies. Id. Plaintiffs allege that in connection with these activities, defendant deploys and permits third-party tracking technologies (the "Tracking Tools") that collect, intercept, and transmit users' browsing activity, interactions, and device identifiers to advertising and analytics partners (the "Tracking Entities"). Id.

Plaintiffs allege that plaintiff Nina Harris ("plaintiff Harris") is a California resident who accessed and used the Website to browse deal listings, promotional offers, and related consumer content from California. Compl. ¶ 16.

Plaintiffs allege that plaintiff Andrew Cheung ("plaintiff Cheung") is a Washington resident who accessed and used the Website to browse deal listings, promotional offers, and related consumer content from Washington state. Id. ¶ 17.

### B.    Defendant's Use of Tracking Tools

Plaintiffs allege that defendant operates the Website and installed the Tracking Tools on it. Id. ¶ 39. Plaintiffs allege that these Tracking Tools operate invisibly, tracking the Website's visitors' activity surreptitiously. Id. Plaintiffs allege that upon a user's initial visit to the Website, defendant immediately begins placing and transmitting third-party tracking technologies before users receive any meaningful notice or opportunity to control the interception or dissemination of their data. Id. ¶ 3.

Plaintiffs allege that defendant transmits users' electronic communications and online activity to the Tracking Entities, including Meta (also referred to as Facebook), Google, and Reddit, through the Tracking Tools. Id. ¶ 3. Plaintiffs allege that the Tracking Tools enable the Tracking Entities to monitor users' activity, including

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | | Date | June 29, 2026 |
|---|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | | |

webpage browsing activity, views of specific products, and initiation of checkout to purchase products, across the Website in real time and the Tracking Tools associate users' site activity with persistent identifiers. Id.

Plaintiffs allege that the Tracking Tools collect information about users' site activity when events specified by defendant—like searching for a product or checking out to purchase a product—are triggered. Id. Plaintiffs allege that parameters set by defendant determine just how much data is collected, and how specific that data is. Id. ¶ 41. Plaintiffs allege that the Tracking Tools capture detailed interaction and behavioral data, including links, buttons, forms, and other on-page elements interacted with by users, as well as information entered into search fields. Id. ¶ 4. Plaintiffs allege that the data also includes routing and addressing information, including location information, IP addresses, and persistent identifiers used to identify the source of communications and the destination for the data. Id. Plaintiffs allege that the Tracking Tools also capture and transmit device and technical identifiers such as device type, operating system, browser type, user identifiers that enable recognition across sessions and websites, and approximate geolocation data. Id. Plaintiffs allege the Tracking Entities use this data to infer users' interests, preferences, age, or other characteristics based on the users' behavior on the Website. Id. Plaintiffs collectively refer to this information in the complaint as "Sensitive Information." Id.

Plaintiffs allege that the network requests intercepted by the Tracking Entities include request URLs that include the names of the products users browse and/or purchase. Id. ¶ 111. Plaintiffs allege that defendant's use of the Tracking Tools enabled the Tracking Entities to intercept Request URLs that specify the content users accessed on webpages on the Website. Id. ¶ 115.

Plaintiffs allege that defendant did not obtain plaintiffs' express or implied consent to be subjected to data sharing with the Tracking Tools for the purposes of fingerprinting and de-anonymization. Id. ¶ 104. Plaintiffs allege that defendant did not obtain plaintiffs' or Class Members' express or implied consent to be subjected to data sharing with the Tracking Entities for the purposes of fingerprinting and de-anonymization, nor did defendant obtain a court order. Id. ¶ 106. Plaintiffs allege that defendant does not provide a "distinct and separate" form for users to provide "informed, written consent." Id. ¶ 134. Plaintiffs also allege that no court order to install a trap and trace device via the Tracking Tools was obtained by defendant. Id. ¶ 105.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | | Date | June 29, 2026 |
|---|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | | |

Plaintiffs allege that defendant's privacy policy tells users that it may engage with data providers who collect information from users and target them with ads through the use of opt out form. Id. ¶ 124. Plaintiffs allege that the privacy policy goes on to falsely assure users that these cookies "contain no personally identifiable information." Id. Plaintiffs additionally allege that defendant's privacy policy fails to disclose the use of several Facebook tracking cookies that allow Facebook to link users to their collected data, including the c user cookie, the datr cookie, and the fr cookie. Id. ¶ 125.

Plaintiffs allege that defendant features both movies and video games in its "Featured Deal Categories" section, curating and providing access to them for consumers. Id. ¶ 126. Plaintiffs allege that defendant earns a commission from every sale resulting from consumers clicking on links on the Website to purchase items, including video content. Id. ¶ 127. Plaintiffs allege that defendant actively solicits deals and sales from partners. Id. ¶ 128. Plaintiffs allege that partners, including those selling video content, can pay defendant to submit their deals to the Website, gain feedback on those deals, including setting pricing, and have those deals advertised on the frontpage of the Website to increase sales. Id. Plaintiffs allege that defendant posts many deals on the Website, including those for prerecorded audio-visual materials. Id.

Plaintiffs allege that defendant solicits individuals to subscribe to the Website, and defendant sends subscribers emails advertising deals, including those for prerecorded audio-visual materials. Id. ¶ 129. Plaintiffs allege that defendant, through the Website, engages in the business of providing prerecorded audio-visual materials to subscribers, including plaintiffs and the other Class Members, and other users. Id. ¶ 130. Plaintiffs allege that the Website provides offers of videos and video games for purchase to subscribers, including to plaintiffs and the other Class Members, by advertising discounted videos and video games on the Website and directing users to purchase video materials through partnered retailers. Id.

Plaintiffs allege that defendant and the Tracking Entities benefitted from the interception of plaintiffs' communications by reading and subsequently using the intercepted communications to build detailed profiles based on plaintiffs' browsing habits, and using that profile to target plaintiffs with advertising. Id. ¶ 118. Plaintiffs allege that the Tracking Entities independently benefit from the interception of plaintiffs' communications by using data collected by the Tracking Tools to improve their own products and advertising services, and marketing those advertising capabilities to other potential businesses seeking to market to users, including plaintiffs. Id. ¶ 119.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

1.    The Facebook Pixel

Plaintiffs allege that Facebook offers its own tracking pixel (the "Facebook Pixel") to website owners for the purpose of monitoring user interactions on their websites, which can then be shared with Facebook. Id. ¶ 45. Plaintiffs allege that with respect to the Facebook Pixel, defendants added a parameter to track events being triggered, among other parameters. Id. ¶ 43. Plaintiffs allege that receiving this information enables Facebook and defendant to build valuable personal profiles for website users to inform its targeted advertising campaigns, enhancing marketing effectiveness and increasing the chance of converting users into paying customers. Id. ¶ 51. Plaintiffs allege that the harvested data improves defendant's advertising by pinpointing audience demographics by interests, gender, or location and finding the people who are most likely to take action and view content. Id. ¶ 52. Plaintiffs allege that the Facebook Pixel tracks user-activity on web pages by monitoring events, which when triggered, causes the Pixel to automatically send users' sensitive information directly to Facebook. Id. ¶ 57. Plaintiffs allege that the Website tracks user-activity events including: (i) a user loading a page with a Pixel installed (the "PageView event"); (ii) when a user views pre-designated content, like products for sale (the "ViewContent" event); (iii) when a user clicks a pre-designated button (the "SubscribedButtonClick" event); and, (iv) the "InitiateCheckout" event (collectively with PageView event, ViewContent event, and SubscribedButtonClick event, the "Pixel Events"). Id. Plaintiffs allege that defendant's use of the Facebook Pixel on the website follows a user's journey to purchasing a product. Id. ¶ 61.

Plaintiffs allege that to make use of the Facebook Pixel, defendant agreed to Facebook's Business Tool Terms (the "Facebook Terms"). Id. ¶ 63. Plaintiffs allege that Facebook directs parties implementing the Facebook Pixel—here, defendant—to encrypt request information *before* data can be shared. Id. ¶ 66. Plaintiffs allege that Facebook further provides Facebook Pixel users, such as defendant, guidance on responsible data handling, and details how data is acquired, used, and stored, including which information is shared with Facebook. Id. ¶ 67. Plaintiffs allege that as a sophisticated party entering into a business arrangement with another sophisticated party, defendant was on notice of the potential privacy violations that would result from use of the Facebook Pixel, and ignored Facebook's warnings to safely handle its users' data and to warn its users that the Website would disclose information in a manner that threatened users' private information. Id. ¶ 69.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

### 2.    The Reddit Pixel

Plaintiffs allege that defendant installed a tracking pixel on its Website created by social media platform, Reddit (the "Reddit Pixel"). Compl. ¶ 70. Plaintiffs allege that in defendant's use of the Reddit Pixel, defendant configured the Reddit Pixel to include a parameter called "id" which identifies defendant's Reddit Pixel ID as "a2_hy8hf63ygf1x". Id. ¶ 74. This data is sent both when receiving communications from the Website and as users send communications to the Website. Id. Plaintiffs allege that Reddit uses this data to help advertisers, including defendant, gauge the effectiveness of their ad campaigns, improve their ability to attribute activity to specific ad campaigns, track visitors across devices, and help them create more precisely targeted ad campaigns. Id. ¶ 75. Plaintiffs allege that defendant's use of the Reddit Pixel on the Website follow a user's journey to searching for and purchasing a product on the Website. Id. ¶ 77.

Plaintiffs allege that to utilize the Reddit Pixel, defendant agreed to Reddit's Business Tool Terms (the "Reddit Terms"). Id. ¶ 78. Plaintiffs allege that the Reddit Terms informs website owners, such as defendant, that the employment of the Reddit Pixel will result in data sharing, including with Reddit, of users' website actions, email addresses, cookie IDs, and device IDs, among other "matching parameters." Id. ¶ 79. Plaintiffs allege that the Reddit Terms make clear that the onus is on defendant to provide all necessary transparency notices, and obtain all necessary rights, permissions, and lawful bases, including consent, to share information with TikTok. Id. ¶ 80. Plaintiffs allege that as a sophisticated party entering into a business arrangement with another sophisticated party, defendant was on notice of the potential privacy violations that would result from use of the Reddit Pixel, and ignored Reddit's warnings to safely handle its users' data and to warn its users that the Website would disclose information in a manner that threatened users' private information. Id. ¶ 82.

### 3.    Google Ads and Analytics

Plaintiffs allege that Google Ads is an advertising platform developed by Google that allows advertisers to bid to display advertisements, service offerings, product listings, or videos to web users. Compl. ¶ 84. Plaintiffs allege that Google AdSense works in conjunction with the Google Ads bidding system and allows website owners to display Google Ads on their websites and earn a revenue share when ads are viewed or clicked. Id. ¶ 84. Plaintiffs allege that the search terms bid on through Google Ads are used by website owners participating in Google AdSense, allowing those owners to share in advertising revenue generated by Google. Id. Plaintiffs allege that Google Ads

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

intercepted plaintiffs' search terms on the Google search engine and that Google profits from the Website's use of the Google search engine. Id. ¶ 88.

Plaintiffs also allege that like the Facebook Pixel, Google Analytics ("GA") collects data about user interactions with a website, including link clicks, button clicks, form submissions, conversions, shopping cart abandonment, items added to or removed from carts, file downloads, scrolling behavior, video views, call to action performance, table of contents clicks, and other customizable events. Id. ¶ 93. Plaintiffs allege that Google acknowledges the legal implications of those practices and assigns responsibility for user disclosure to website developers, including defendant. Id. ¶ 95. Plaintiffs allege that defendant's Google Tag ID is included in transmissions sent to and from users' devices. Id. ¶ 97. Plaintiffs allege that defendant added GA to the Website, which caused plaintiffs' search terms to be intercepted and transmitted to Google. Id. ¶ 98. Plaintiffs allege that Google products then analyze that information and provide feedback that allows defendant to monetize the collected data through targeted advertising. Id. ¶ 99.

### C.   Plaintiff Harris

Plaintiffs allege that plaintiff Harris makes purchases through the Website on a monthly basis, at a minimum. Id. ¶ 5. Plaintiffs allege that through defendant's placement of Tracking Tools on the Website, plaintiff Harris's personal information, including browsing activity, page interactions, purchase activity, and device identifiers, was intercepted and transmitted as soon as plaintiff Harris visited the Website. Id. ¶ 16. Plaintiffs allege that plaintiff Harris did not authorize defendant or any Tracking Entity to monitor, record, or disclose her website communications. Id. ¶ 5.

Plaintiffs allege that on one or more occasions, as recently as January 6, 2026, plaintiff Harris's information was intercepted by and sent to the Tracking Entities. Id. ¶ 16. Plaintiffs allege that plaintiff Harris began receiving targeted or unsolicited advertisements related to the content and products she viewed on the Website. Id. Plaintiffs allege that plaintiff Harris would not have accessed or used the Website had she known that her information would be intercepted and disclosed without her knowledge. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

### D.    Plaintiff Cheung

Plaintiffs allege that plaintiff Cheung visits the Website nearly daily. Id. ¶ 6. Plaintiffs allege that plaintiff Cheung has an account on the Website. Id. ¶ 17. Plaintiffs allege that plaintiff Cheung uses the Website to, among other things, browse deal listings, accept offers for discounted goods, and similar consumer activities. Id. ¶ 6. Plaintiffs allege that plaintiff Cheung makes purchases through the Website several times a year, at a minimum, including of pre-recorded video materials such as video games. Id. Plaintiffs allege that through defendant's placement of the Tracking Tools on the Website, plaintiff Cheung's personal information, including browsing activity, page interactions, purchase activity and device identifiers, was intercepted and transmitted as soon as plaintiff Cheung visited the Website. Id. ¶ 17. Plaintiffs allege that plaintiff Cheung did not authorize defendant or any Tracking Entity to monitor, record, or disclose his website communications. Id. ¶ 6.

Plaintiffs allege that plaintiff Cheung purchased four video games, including "Warhammer 40,000: Space Marine 2" on November 26, 2025; "Helldivers II" on November 24, 2025; "Split Fiction" on March 10, 2025, and "Elden Ring" on November 21, 2024, by navigating to the webpage for each game on the Website and clicking through links on the Website to purchase each game. Id. ¶¶ 17, 131. Plaintiffs allege that all four of these video games contain video cutscenes, which are pre-recorded audio-visual animations that provide narratives for the video game story. Id. Plaintiffs allege that plaintiff Cheung's sensitive information, including audio-visual material and personally identifiable information, was intercepted by and sent to Tracking Entities. Id. ¶ 17. Plaintiffs allege that when consumers engage with defendant's offers on the Website, the Tracking Entities discover the identities of consumers through the Tracking Tools, via identifiers transmitted to the Tracking Entities along with information identifying the purchased video material. Id. ¶ 133. Plaintiffs allege that the Tracking Tools informed the Tracking Entities, including Facebook, each time plaintiff Cheung purchased these video games, along with his personally identifying information. Id. ¶ 17. Plaintiffs allege that plaintiff Cheung began receiving targeted or unsolicited advertisements related to the content and products viewed on the Website. Id. Plaintiffs allege that plaintiff Cheung would not have accessed or used the Website had he known that his sensitive information would be intercepted and disclosed without his knowledge. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

## III.   LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action.  This defect may exist despite the formal sufficiency of the allegations in the complaint.  T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964).  When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction.  See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction.  Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000).  If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous.  See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004).

### B.      Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   DISCUSSION

Defendant argues that plaintiffs' complaint should be dismissed because plaintiffs' allegations fail to establish Article III standing and fail to state a claim.  Mot. at 2.

### A.   Standing

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | | Date | June 29, 2026 |
|---|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | | |

judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).

Here, defendant focuses on the injury requirement. Mot. at 3. Defendant argues that plaintiffs have not identified any concrete, particularized harm sufficient to confer standing. Id. Defendant argues that plaintiffs' conclusory allegations that they suffered an "invasion of privacy" are insufficient, and that plaintiffs admit to voluntarily interacting with the Website and providing it their IP addresses. Id. at 5. Defendant argues that plaintiffs do not allege any specific example of how the Website's purported use of tracking pixels has harmed them in any way. Id. Defendant argues that an invasion of privacy claim related only to an IP address is insufficient to confer standing. Id. Defendant also argues that plaintiffs' damages allegations are not traceable to their use of the Website, as the Website directs users to external links to complete purchases. Id. Defendant argues that plaintiff Harris does not specify when, what, and how she input her sensitive information into the Website, making it impossible to trace her interactions with the Website to any damages she suffered. Id. at 5-6. Defendant argues that although plaintiff Cheung provides details about items purchased through links on the Website, he does not disclose which external websites he completed the purchases on, nor does he allege to have received advertisements relevant to those purchases. Id. at 6. Defendant concludes that plaintiffs' complaint is nothing more than vague allegations failing to allege any actual injury-in-fact. Id.

In opposition, plaintiffs argue that courts in the Central District of California have held that a plaintiff establishes Article III standing where a defendant deprives them of control over their personal information and online activity through the use of tracking tools without their consent. Opp. at 3 (citing cases). Plaintiffs argue that their allegations align with these authorities because, here, plaintiffs allege that defendant procured the Tracking Entities and their Tracking Tools to place tracking and identifying cookies on plaintiffs' devices, and those tracking cookies then shared plaintiffs' private information, including browsing activity, the titles of video games purchased, as well as other items purchased through Slickdeals. Id. at 4 (citing Compl.). Plaintiffs argue that they further allege that defendant and the Tracking Entities then used the insights derived from plaintiffs' personal information for marketing and targeted advertising purposes, enhancing their bottom line. Id. (citing Compl.). Plaintiffs argue that the traditionally actionable common law harm that their claims are analogous to is the unauthorized disclosure of plaintiffs' private information without consent, which also violates the VPPA. Id. at 5. Plaintiffs argue that the private information disclosed extended well

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

beyond mere IP addresses and was personally identifiable.  Id.  Plaintiffs next argue that defendant's traceability argument is a red herring and unsupported by any relevant authority.  Id.  Plaintiffs argue that their damages are traceable to their use of the Website because the damages stem from the Tracking Tools procured and installed on the Website, permitting the Tracking Tools and Tracking Entities to intercept and disclose plaintiffs' private information.  Id.  Plaintiffs argue that these damages are distinct from any subsequent browsing by plaintiffs on third-party websites, which may be separately liable for similar violations.  Id.

In reply, defendant argues that plaintiffs fail to specify the specific sensitive personal information that was purportedly collected by defendant, and instead plaintiffs merely conclude, without support or specificity, that personally identifying or private information was disclosed.  Reply at 2.  Defendant argues that plaintiffs fail to allege the disclosure of *sensitive* personal information, alleging only the tracking of "browsing activity, the titles of video games purchased, as well as other items purchased through Slickdeals."  Id. (citing Opp. at 4).  As to "browsing activity," defendant argues that it is unclear what plaintiffs are referencing, and such a blanket and speculative assertion is insufficient to confer standing.  Id. (citing cases).  Defendant argues that for claims like this to survive the pleading, there must be something more than the alleged disclosure of innocuous information.  Id. at 3.  Defendant argues that plaintiffs' allegations are distinguishable from authorities that plaintiffs cited where it was alleged that tracking was used to create a "cradle-to-grave profile" that included, for example, the user's "employment history and religious affiliations."  Id. (quoting In re Facebook Inc. Internet Tracking Litig., 956 F.3d 589, 599 (9th Cir. 2020).  Defendants also argue that to the extent plaintiffs assert that a violation of the VPPA alone entails Article III standing, such reasoning is flawed in light of the Supreme Court's holding in TransUnion LLC v. Ramirez, 594 U.S. at 430-31, requiring courts to assess whether plaintiffs have identified a close historical or common law analogue for their asserted injury.  Reply at 3 n.1.

The Court finds that plaintiff Harris lacks Article III standing to sue for each of her two statutory claims and her UCL claim.  Assuming *arguendo*, that plaintiff has alleged facts that state claims for violations of Cal. Penal Code § 631 and §638.51, those statutory violations alone would not be sufficient to establish Article III standing.  See TransUnion LLC v. Ramirez, 594 U.S. 413, 427 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**             **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

statutory violation."). In considering a plaintiff's standing to sue for statutory violations, courts must "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." Popa v. Microsoft Corp., 153 F.4th 784, 791 (9th Cir. 2025). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." TransUnion, 594 U.S. at 414.

Here, plaintiffs' complaint alleges that defendant's violation of CIPA "constitutes an invasion of privacy" and "intrusion upon seclusion." See Compl. ¶¶ 3, 7, 202. Indeed, the Ninth Circuit recognizes that "[v]iolations of the right to privacy have long been actionable at common law." Eichenberger v. ESPN, Inc., 876 F.3d 979, 983 (9th Cir. 2017). The Supreme Court also recognizes that intangible harms, such as intrusion upon seclusion, can be concrete. TransUnion, 594 U.S. at 425 (citing Gadelhak v. AT&T Services, Inc., 950 F.3d 458, 462 (7th Cir. 2020)). But a conclusory allegation that defendant intruded upon plaintiff's seclusion is not enough to establish standing. Plaintiff must adequately allege that she suffered injury that is analogous to the common law tort of intrusion upon seclusion, i.e., ""an intentional interference with [her] interest in solitude or seclusion, either as to [her] person or as to [her] private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]." Nayab v. Cap. One Bank (USA), N.A., 942 F.3d 480, 491 (9th Cir. 2019) (quoting Restatement (Second) of Torts § 652B cmt. a (Am. Law Inst. 1977)).

Here, plaintiff Harris alleges that she visited the Website frequently, including as recently as January 6, 2026, and that she "used the Website to, among other things, browse deal listings, accept offers for discounted goods, and similar consumer activities." Compl. ¶ 5. Plaintiff Harris further alleges that "[d]uring those visits," her "browsing activity and interactions" with the Website "were intercepted by and transmitted to the Tracking Entities without her knowledge or consent." Id. The complaint explains that the Tracking Entities and Tracking Tools capture "links, buttons, forms, and other on-page elements interacted with by users, as well as information entered into search fields," and the collected data "also includes routing and addressing information, including location information, IP addresses, and persistent identifiers used to identify the source of communications and the destination for the data," as well as "device and technical identifiers such as device type, operating system, browser type, user identifiers that enable recognition across sessions and websites, and approximate geolocation data." Id. ¶ 4. The complaint further alleges that the "Tracking Entities use this data to infer users' interests, preferences, age, or other characteristics based on the users' behaviour [sic] on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | | Date | June 29, 2026 |
|---|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | | |

the Website." Id. The complaint refers to these potential types of intercepted information as "Sensitive Information," but that is merely a conclusory allegation.

In re Facebook explains that a right to privacy "encompasses the individual's control of information concerning his or her person" and is violated when the defendant "reveal[s] an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." 956 F.3d at 598-99. The collection of a plaintiff's IP address and other device identifiers from her visit to a defendant's website "does not cause the kind of harm that can be vindicated in federal court." Carolus v. Nexstar Media Inc., No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (citing United States v. Forrester, 512 F.3d 500, 509-11 (9th Cir. 2008)); see also Mitchener v. CuriosityStream, Inc., No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), appeal dismissed, No. 25-4990, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) ("If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location).").

Here, plaintiff Harris alleges that defendant disclosed her browsing activity and interactions with the Website to the Tracking Entities which resulted in plaintiff Harris receiving "targeted or unsolicited advertisements related to the content and products viewed on the Website." Compl. ¶ 16. Nevertheless, the complaint fails to specify what personal information about plaintiff Harris defendant actually obtained from this tracking activity. Vague references to "browsing activity" and "page interactions" are insufficient for the Court to infer that defendant's conduct "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." Popa, 153 F.4th at 791 (explaining that "[plaintiff] identifies no embarrassing, invasive, or otherwise private information collected by [defendant]," and comparing the defendant's tracking of plaintiff's interactions with the defendant's website to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."). Absent any non-conclusory allegations that she had a reasonable expectation of privacy in her "browsing activity" or "page interactions" with defendant's Website, plaintiff Harris fails to allege a concrete injury that is analogous to a common-law invasion of privacy tort.

In sum, without any specific allegations as to what of plaintiff's personal information was collected by defendant, the Court cannot identify any harm to her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

privacy, much less identify a "highly offensive" intrusion upon seclusion. See Hughes v. Vivint, Inc., No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4-5 (C.D. Cal. July 12, 2024) ("As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy."); see also Mikulsky v. Noom, Inc., 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (granting motion to dismiss for lack of standing because "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest"). Accordingly, plaintiff Harris fails to allege an injury sufficient to confer Article III standing for her two CIPA claims. Because plaintiff Harris' UCL claim alleges the same injury and no independent injury, she also lacks Article III standing for that claim.

By contrast, plaintiff Cheung, in addition to making similar vague allegations that defendant collected his browsing activity and page interactions, specifically alleges that he "purchased several video games through the Website," and that this video purchase information was transmitted to the Tracking Entities, including Facebook, along with his personally identifying information. Compl. ¶ 17. Plaintiff further alleges that he "began receiving targeted or unsolicited advertisements related to the content and products viewed on the Website." Id. The Court finds that plaintiff Cheung adequately alleges an injury analogous to a common law invasion of privacy tort, specifically the tort of intrusion upon seclusion, because plaintiff Cheung has a reasonable expectation of privacy in his "video-viewing history." See Eichenberger, 876 F.3d at 983 (holding that an adequately alleged VPPA violation confers Article III standing because the VPPA codifies a "consumer's substantive privacy interest in his or her video-viewing history"); see also Plotsker v. Envato Pty Ltd., No. 2:24-CV-04412-MEMF-RAO, 2025 WL 2481422, at *5 (C.D. Cal. Aug. 26, 2025) (same); Balestrieri v. SportsEdTV, Inc., No. 25-CV-04046-SK, 2025 WL 2776356, at *8 (N.D. Cal. Sept. 16, 2025) (same); Edwards v. MUBI, Inc., 773 F. Supp. 3d 868, 877 (N.D. Cal. 2025) (same). Thus, plaintiff Cheung's VPPA and ECPA claims are not "bare procedural violation[s], divorced from any concrete harm." Spokeo, 578 U.S. at 341.

To the extent that defendant disputes plaintiffs' factual allegations relating to whether plaintiff Cheung's alleged privacy harm is traceable to defendant's conduct and contends that plaintiff Cheung's alleged injury may instead be traceable to independent, third-party conduct, such a factual dispute is "intertwined with the merits of the plaintiff's claim," and the Court must "leave the resolution of material factual disputes to the trier of fact." Bowen v. Energizer Holdings, Inc., 118 F.4th 1134, 1143 (9th Cir. 2024) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

Leite v. Crane Co., 749 F.3d 1117, 1122 n.3 (9th Cir. 2014)).  Accordingly, the Court concludes that plaintiff Cheung adequately alleges Article III standing for his VPPA and ECPA claims.

Finally, the Court finds that plaintiffs Harris and Cheung have adequately alleged Article III standing for their unjust enrichment claim.  Plaintiffs allege that "[d]efendant obtained a benefit by collecting, processing, and enabling third-party monetization of" plaintiffs' information that was collected and transmitted without plaintiffs' valid consent.  Compl. ¶¶ 226, 227.  Plaintiffs argue that they conferred these benefits on defendant and that defendant has thus been unjustly enriched at their expense.  Id. ¶ 228.  Thus, plaintiffs allege an actionable monetary injury—the use of their personal information without compensation.  "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"  Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 464 (2017).  Furthermore, the complaint shows that the alleged injury was likely caused by defendant's conduct, and such a monetary injury is redressable by the federal courts.

In conclusion, the Court grants in part and denies in part defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The Court **DISMISSES** plaintiff Harris' two CIPA claims (Claims III and IV) and her UCL claim (Claim V) for lack of Article III standing, with leave to amend.

    **B.**    **Failure to State a Claim**

Because the Court has determined that Claims III, IV, and V of the complaint are dismissed due to inadequate allegations as to the basis for plaintiff Harris' Article III standing, whether the complaint has failed to state those claims is **MOOT**.  Defendant's arguments may be renewed in a motion to dismiss any First Amended Complaint.[1]  The Court proceeds to consider defendant's Rule 12(b)(6) arguments for the remaining claims.

    1.    Plaintiff Cheung's VPPA Claim (Claim I)

---

[1] Without making any determination of the merits of defendant's arguments on these claims, it is recommended that plaintiffs consider them in connection with the preparation of any First Amended Complaint in order to promote a more efficient resolution of this matter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | | Date | June 29, 2026 |
|---|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | | |

"Although Plaintiff has Article III standing to pursue this action, whether he can state a claim for relief under the VPPA is a different issue." Cantu v. Tractor Supply Co., No. 2:23-CV-3027-HDV-JC, 2024 WL 1601257, at *3 (C.D. Cal. Mar. 21, 2024). Defendant argues three reasons why plaintiff Cheung's VPPA claim should be dismissed for failure to state a claim for relief.  Mot. at 6-10.

### a.  Video Tape Service Provider

First, defendant argues that it is not a "video tape service provider" under the VPPA because it does not sell, rent, or deliver audio-visual materials to its users, but rather the Website directs its users to external retailers' websites to complete their purchases.  Id. at 7.  Defendant argues that the term "video tape service provider" does not include every business with some tangential relationship to video content, and that its business is only peripherally or passively involved in the conveyance of video content, which defendant argues is not enough to be held liable under the VPPA.  Id.  Defendant argues that it does not publish video content on its website, nor does it sell video content. Id.  Defendant argues that it merely lists the "deals" its users find across the internet, which sometimes happen to be for video content.  Id.  Defendant argues that those deals lead users to external retailers where they can then complete purchases for video content. Id.  Defendant argues that its business does not revolve around video content, and it could conduct its business without hosting any "deals" for video content.  Id. at 7-8.  Defendant concludes that because it is not substantially involved in delivering video content, nor does it tailor its business to delivering video content, it is not a "video tape service provider" under the VPPA.  Id. at 8.

In opposition, plaintiffs argue that the plain meaning of "business" allows multiple defendants to be engaged in the business of selling the same video content and that nothing in the VPPA requires that video-related activity be a defendant's primary business.  Opp. at 6.  Plaintiffs argue that defendant qualifies as a video tape service provider because it involved itself and took part in the commercial activity of selling video products for profit.  Id. (citing Compl. ¶¶ 130-31).  Plaintiffs argue that defendant concedes in its motion that the Website features video products.  Id. at 7.  Plaintiffs further argue that defendant's revenue is tied to funneling consumer purchases to partner retailers, including purchases of video products.  Id. (citing Compl. ¶¶ 127-28, 163). Plaintiffs argue that defendant's active participation in the user purchase journey and its receipt of commission-based compensation upon the completion of those sales place defendant squarely within the meaning of "engaged in the business" of selling audio-visual materials.  Id. (citing Compl. ¶¶ 126-130, 162-63).  Plaintiffs argue that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
| --- | --- | --- | --- |
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

defendant's contention that it could still conduct its business without hosting any deals for video content misses the point because defendant's choice to participate in the process of selling video products is dispositive.  Id.

In reply, defendant argues that plaintiffs concede that defendant is not a direct retailer of audio-visual materials, but rather defendant guides users to an external retailer's website to complete a purchase.  Reply at 4-5.  Defendant argues that its receipt of monetary compensation is not enough to confer it the status of a video tape service provider.  Id. at 5.  Defendant argues that the cases that plaintiffs cite are distinguishable and that defendant's involvement in the sale of video products here is far too attenuated to be considered engaged in the business of selling video products.  Id. at 5.

The Court finds that the complaint adequately alleges that defendant is a "video tape service provider" under the VPPA.  The VPPA defines "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . ."  18 U.S.C. § 2710(a)(4).  "Congress's use of the phrase 'similar audio visual materials' indicates that the definition is medium-neutral; the defendant must be in the business of delivering video content, but that content need not be in a particular format."  In re Vizio, Inc., Consumer Priv. Litig., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).

Here, the complaint factually alleges: "The Website provides offers to buy videos and video games to Subscribers, including to Plaintiffs and the other Class Members, by advertising discounted videos and video games on the Website and directing users to purchase video materials through partnered retailers."  Compl. ¶ 130.  Defendant admits that it "directs [users] to an external retailer's website to complete the purchase."  Mot. at 7.  The complaint further alleges that defendant "earns a commission from every sale resulting from consumers clicking on links on the Website to purchase items, including video content."  Id. ¶ 127.  Thus, under the plain meaning of "engaged in the business" and "sale," the complaint sufficiently alleges that defendant is "engaged in the business" of the "sale" of video content, even if consumers ultimately complete the purchase with a "partner retailer."  See In re Vizio, 238 F. Supp. 3d at 1221 ("Under [the dictionary] definition [of "business"], a defendant can be 'engaged in the business' of delivering video content even if other actors *also* take part in the delivery of the same video content.") (emphasis in original).  Defendant argues that while multiple persons can be "engaged in the business" of *delivering* the same video content, multiple persons cannot be "engaged in the business" of *selling* the same video content.  Reply at 5.  The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

disagrees.  For example, an independent salesperson who only earns a commission on a sales transaction between a buyer and seller is nonetheless "engaged in the business" of that sale.  The statutory definition of a video tape service provider does not limit liability only to "direct" sellers.

Defendant's argument that it is "only peripherally or passively involved in the conveyance of video content," Mot. at 7, is a factual contention not supported by the factual allegations in the complaint, which the Court must accept as true.  Pareto, 139 F.3d at 699.  Even assuming the truth of defendant's contention, that would not preclude defendant from qualifying as a video tape service provider under the VPPA.  See Turner v. Nat'l Notary Ass'n, No. CV 25-0334 FMO (PDX), 2026 WL 947171, at *4 (C.D. Cal. Mar. 27, 2026) ("[D]efendant's suggestion that under the VPPA a defendant must be 'primarily' engaged in the business of selling covered video material, and that 'delivering covered video materials [must be] the defining feature' of its business, is misplaced as it relies on inapposite cases. Those cases involved contentions that defendants were VTSPs because they were in the business of 'delivering' audio visuals materials, which may involve greater line-drawing issues.") (citations omitted).  Here, as in Turner, the complaint alleges that defendant is engaged in the business of selling, not delivering, video content.  See Compl. ¶ 130.  Accordingly, the Court concludes that plaintiffs adequately allege that defendant is a "video tape service provider" under the VPPA.

> b.  *Consumer*

Next, defendant argues that plaintiffs do not fit into the definition of "consumers" under the VPPA.  Mot. at 8.  Defendant argues that plaintiffs are not renters or purchasers because they did not rent or purchase anything directly from defendant.  Id.  Defendant argues that plaintiffs are also not "subscribers" under the VPPA, despite the fact that plaintiffs can create an account with defendant, because users need not have an account to browse the "deals" or to click links to complete purchases on any third-party retailers' websites.  Id.

In opposition, plaintiffs argue that plaintiff Cheung qualifies as a consumer under the VPPA because he made purchases for which defendant received compensation, and alternatively he is a subscriber because he provided his information to create an account on Slickdeals.  Opp. at 7-8.  Plaintiffs argue that plaintiff Cheung is a purchaser even though he did not purchase video content directly from defendant because defendant nonetheless participated in the sales process.  Id. at 8.  Plaintiffs argue that it is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

necessary that plaintiff Cheung's account with Slickdeals provide access to audio-visual material to qualify plaintiff Cheung as a subscriber under the VPPA. Id. (citing cases).

In reply, defendant argues that the VPPA's definition of "consumer" does not include those who make a purchase from a third party connected to a video tape service provider. Reply at 6. And defendant argues that California courts have rejected plaintiffs' argument that providing information to create a user account "for some undisclosed purpose or benefit" is sufficient to qualify as a VPPA subscriber. Id. (citing Jefferson v. Healthline Media, Inc., 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023).

The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing] . . . personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The Court recognizes that defendant maintains that it is not a "video tape service provider" because consumers ultimately complete their purchases of any video content linked on the Website through third-party retailers. However, this argument is unavailing because the VPPA allows liability against any "video tape service provider" who is "engaged in the business . . . of rental, sale, or delivery" of video conduct. 18 U.S.C. § 2710(a)(4). The VPPA does not limit liability to parties from which a "consumer" directly rents or purchases video conduct but rather any party "engaged in the business" of such a sale. Id. Here, defendants do not appear to dispute that plaintiff Cheung alleges purchases of video content from the third-party retailers. See generally Opp. Therefore, plaintiff Cheung is sufficiently alleged to be a "consumer" under the VPPA. See 18 U.S.C. § 2710(a)(1). Accordingly, the Court need not determine whether plaintiff Cheung's user account on the Website qualifies him as a subscriber under the VPPA.

### c. Personally Identifiable Information

Finally, defendant argues that plaintiffs fail to plead sufficient facts to allege defendant knowingly disclosed plaintiffs' personally identifiable information ("PII"). Mot. at 9. Defendant argues that the complaint merely alleges that plaintiff Cheung purchased some video games using a deal link he located on defendant's website, but defendants argue that he did not purchase those video games from defendant. Id. at 10. Defendant argues that plaintiff Cheung thus did not provide defendant with his PII but rather provided a third-party website his PII in connection with purchasing the video games. Id. Defendant further argues that plaintiffs' allegations regarding defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

collection of users' searches or browsing history does not constitute PII under the VPPA. Id.

In opposition, plaintiffs argue that plaintiff Cheung alleges that when he purchased video products, his personal identifiers, including his Facebook ID, were linked to the titles of his purchases and were in turn disclosed to the Tracking Entities via the Tracking Tools installed on the Website. Opp. at 8-9. Plaintiffs argue that this is sufficient to plead disclosure of PII under the VPPA. Id. at 9.

In reply, defendant maintains that plaintiff Cheung did not and could not provide his PII regarding his purchases to defendant because those purchases were completed with third parties. Reply at 7. Defendant argues that plaintiffs conflate browsing activity with purchase activity. Id. at 8.

The Court finds that plaintiffs sufficiently allege that defendant disclosed plaintiff Cheung's PII. The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3); see also In re Hulu Priv. Litig., 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("For there to be an actionable VPPA violation, the video provider must have knowingly disclosed: 1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material."). Here, the complaint satisfies these pleading requirements. Plaintiffs allege that defendant disclosed plaintiff Cheung's four video game purchases along with plaintiff's identity by transmitting his purchase activity and personally identifiable device identifiers to the Tracking Entities. Compl. ¶¶ 131-133. Defendant's factual dispute as to whether defendant actually possessed or disclosed any of plaintiff Cheung's purchase activity is better resolved on a more complete factual record rather than on a motion to dismiss. To the extent that defendant contends that it is factually impossible for defendant to possess purchase information when a purchase is completed with a third party, the Court disagrees. The complaint's factual allegations are sufficient to permit the inference that defendant possessed information as to plaintiff Cheung's video game purchases completed with partner retailers. See Compl. ¶ 127 (alleging that defendant earns a commission from every sale resulting from consumers clicking on links on the Website to purchase items). Accordingly, the Court **DENIES** defendant's motion to dismiss plaintiff Cheung's VPPA claim (Claim I).

      2.     Plaintiff Cheung's ECPA Claim (Claim II)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | | Date | June 29, 2026 |
|---|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | | |

Defendant argues that plaintiffs' ECPA claim must be dismissed because of the statute's one-party consent rule. Mot. at 10-11. Defendant argues that plaintiff cannot establish any communication has been unlawfully intercepted because the ECPA is a one-party consent statute that does not make it unlawful for someone to intercept an electronic communication where such person is a party to the communication. Id. Therefore, defendant argues that it cannot be held liable for "eavesdropping" upon alleged communications between plaintiffs and defendant. Id. Defendant argues that the criminal or tortious purpose exception to the one-party consent rule does not apply where the alleged crime or tort is incidental to the interception. Id. at 11. Rather, defendants argue, the interception must be alleged to have been performed for the purpose of committing a tort or crime for the exception to apply. Id. Defendant argues that, here, it did not intercept plaintiffs' information, much less, transmit plaintiffs' sensitive information to commit a crime or tortious act. Id. at 11-12. Defendant argues that plaintiffs merely claim that their data was used to target ads to themselves, and an alleged invasion of privacy and violation of state privacy law is not enough to establish an ECPA claim. Id. at 12.

In opposition, plaintiffs argue that the complaint satisfies all the statutory requirements for pleading an ECPA claim. Opp. at 13. Plaintiffs argue that defendant does not challenge whether plaintiffs have sufficiently pleaded the elements but instead rests its hat on the "party defense." Id. First, plaintiffs argue that the party defense shields only direct interceptors, not procurers of an interception, and plaintiffs argue the allegations show defendant's role as a procurer. Id. Second, plaintiffs argue that the ECPA's crime-tort exception to the party defense applies. Id. Plaintiffs argue that defendant procured and installed the Tracking Tools for the purpose of disclosing users' data to the Tracking Entities, violating the VPPA and plaintiffs' privacy. Id. Plaintiffs argue that defendant's profit motivation does not disqualify the crime-tort exception. Id. at 14 (citing cases). Plaintiffs additionally argue that defendant's subsequent use of the intercepted contents of plaintiffs' communications for marketing and analytics purposes constitutes a violation of CIPA § 631(a). Id.

In reply, defendant argues that plaintiffs' ECPA claim must be dismissed because the one-party consent rule applies and plaintiff has failed to allege a tortious or criminal purpose. Reply at 8. Defendant argues that plaintiffs incorrectly argue that the one-party consent rule does not apply to defendant as an alleged procurer rather than interceptor. Id. Defendant argues that plaintiffs also incorrectly argue that the crime-tort exception applies because of an alleged VPPA violation or non-specific "privacy" violation. Id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

9.  Defendant argues that plaintiffs have not alleged "any act 'independent of the interception itself' that 'was done for a criminal or tortious purpose.'" Id. (quoting Sisti v. Bosley Inc., No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927, at *7 (C.D. Cal. Apr. 27, 2026)).  Defendant argues that by claiming that defendant had a tortious purpose in disclosing plaintiffs' website interactions to third parties, plaintiffs are merely claiming that the purported interception itself was committed for a tortious purpose.  Id.

The ECPA makes it unlawful to intentionally intercept an electronic communication.  See 18 U.S.C. § 2511(1).  To state a claim, plaintiff must allege that defendant "(1) intentionally (2) intercepted [or procured another to intercept] (3) the contents of (4) plaintiff's electronic communications (5) using a device.  There is an exception to liability for a person who is a party to the communication or 'where one of the parties to the communication has given prior consent to such interception.'  This exception applies unless the interception occurred 'for the purpose of committing any criminal or tortious act.'" Doe I v. Google LLC, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (quoting 18 U.S.C. § 2511(2)(d)) (internal citations omitted).  The "criminal or tortious purpose must be separate and independent from the act of the recording." Planned Parenthood Fed'n of Am., Inc. v. Newman, 51 F.4th 1125, 1136 (9th Cir. 2022); see also Deteresa v. American Broad. Cos., 121 F.3d 460, 467 n. 4 (9th Cir. 1997) (emphasizing the distinction between a taping that is itself tortious or criminal, and one carried out for the purpose of committing some other crime or tort).

The Court finds that plaintiffs sufficiently allege that defendant intercepted plaintiff Cheung's communications for the purpose of committing a separate and independent tortious act such that the party consent defense is inapplicable at the pleading stage.  Specifically, plaintiffs allege that defendant intercepted plaintiff Cheung's "order-related interactions," Compl. ¶ 182, which allegedly included video purchase information that defendants allegedly disclosed to the Tracking Entities, in violation of the VPPA.  Compl. ¶ 131.  This alleged disclosure of plaintiff Cheung's video purchase information to advertisers is therefore allegedly tortious conduct that is "independent of the interception itself." Doe I, 741 F. Supp. 3d at 842; see also In re Google Inc. Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 145 (3d Cir. 2015) ("[A]ll authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits.").  Furthermore, to the extent that defendant may argue that the allegations demonstrate that defendant's purpose in intercepting plaintiffs' communications was financial rather than tortious and that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

alleged tort was only "incidental," the Court finds that such a determination is better made on a more complete factual record. Moreover, allegations of financial motivation do not preclude a tortious purpose. See Sussman v. Am. Broad. Companies, Inc., 186 F.3d 1200, 1202 (9th Cir. 1999) ("But the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose."); Riganian v. LiveRamp Holdings, Inc., 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) (denying motion to dismiss ECPA claim); R.S. v. Prime Healthcare Servs., Inc., No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) (same). Defendant does not otherwise challenge the sufficiency of Cheung's ECPA pleading. Accordingly, the Court **DENIES** defendant's motion to dismiss plaintiff Cheung's ECPA claim (Claim II).

3.      Plaintiffs Harris and Cheung's Unjust Enrichment Claim (Claim VI)

Defendant argues that the complaint's allegations that defendant was unjustly enriched when it collected and enabled "third party monetization" of plaintiffs' sensitive information is not enough to state a claim for unjust enrichment under California law. Mot. at 18. Defendant argues that plaintiffs do not sufficiently plead that defendant retained a benefit at plaintiff's expense. Id. Defendant argues that the claim fails because plaintiffs were never in privity with defendant nor do plaintiffs allege to have such a relationship through some corresponding contractual causes of action. Id. at 18-19. Defendants also argue that plaintiffs do not plead that they have either expended their own resources or shown their sensitive information has become less valuable. Id. at 19. Defendant argues that plaintiffs do not and cannot plead that they conferred a benefit onto defendant in exchange for data security because plaintiff Cheung paid for video games, not for data security, and plaintiff Harris did not pay for anything. Id. at 19.

In opposition, plaintiffs argue that California courts have permitted unjust enrichment claims where a plaintiff alleges entitlement to defendant's profits derived from users' personal data, and here is no different. Opp. at 18 (citing cases). Plaintiffs argue that they may bring an unjust enrichment claim because they allege that defendant benefited from using their private information, without their consent, to enhance revenue through advertising, and that otherwise their remedies at law are inadequate. Id. at 19. Plaintiffs argue that the cases cited by defendant are inapposite because in those cases, defendants derived no monetary benefit from the plaintiff's data beyond the initial payment for their service. Id. Here, by contrast, plaintiffs argue that defendant did not merely profit from plaintiffs' purchases through affiliate commissions but also exploited plaintiffs' private information to enhance targeted advertising revenue for itself,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | | Date | June 29, 2026 |
|---|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | | |

generating an additional layer of financial benefit that plaintiffs never contemplated or consented to.  Id.

In reply, defendant argues that plaintiffs' cited authorities do not warrant going against well-established California law and do not stand for the proposition that receipt of personal data itself satisfies the elements of unjust enrichment.  Reply at 16 (citing cases). Defendant argues that courts reject the proposition that personally identifiable information is valuable *per se*.  Id. at 17.  Additionally, defendant argues that plaintiffs' arguments regarding defendant's receipt of "affiliate commissions" should be rejected as plaintiffs do not allege that the commissions are tied to the alleged disclosure of information.  Id.

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted).  The Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." ESG Cap. Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016) (citing Astiana, 783 F.3d at 762 ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'")).  To state a claim for unjust enrichment, a plaintiff must adequately allege "that the defendant received and unjustly retained a benefit at the plaintiff's expense."  Id.  "It must ordinarily appear that the benefits were conferred by *mistake, fraud, coercion* or *request;* otherwise, though there is enrichment, it is not unjust."  Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Assn., 205 Cal. App. 3d 1415, 1422 (Ct. App. 1988) (emphasis in original) (quoting 1 Witkin, Summary of Cal. Law § 97 (9th ed. 1987)).

Here, plaintiffs allege that they conferred the benefit of the value of their data upon defendant by mistake.  See Compl. ¶¶ 16, 17, 226, 227 (alleging that plaintiffs' data has advertising, marketing, and sales value to defendant; that defendant collected and transmitted plaintiffs' data without their consent; and that plaintiffs Harris and Cheung would not have accessed or used the Website had they known that their personal information would be intercepted and disclosed).  Furthermore, plaintiffs allege that defendant's privacy policy misrepresents that the cookies on the Website "contain no personally identifiable information." Compl. ¶ 124.  These allegations are sufficient at this stage to plead an unjust enrichment claim.  See A.J. v. LMND Med. Grp., No. 24-cv-03288-RFL, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegation that defendant benefitted from their information by exchanging it without their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:26-cv-00519-CAS-MBKx | Date | June 29, 2026 |
|---|---|---|---|
| Title | Andrew Cheung et al v. Slickdeals, LLC | | |

consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to preclude dismissal).

That plaintiffs and defendants are not alleged to be in privity does not foreclose an unjust enrichment claim. See 55 Cal. Jur. 3d Restitution § 2 ("Unjust enrichment is a common-law obligation implied by law based on the equities of a particular case and not on any contractual obligation, and thus, a claim for unjust enrichment is said to be inappropriate, and must fail, where express binding agreements define the parties' rights.") (citations omitted). To the extent that defendant argues that plaintiffs fail to allege any expenditure of resources or diminution in value of their personal information, "even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized from its allegedly improper conduct." Gabrielli v. Haleon US Inc., 815 F. Supp. 3d 852, 875 (N.D. Cal. 2025) (citing Hadley v. Kellogg Sales Co., 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018); In re Facebook, Inc., Consumer Priv. User Profile Litig., 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019)).

Accordingly, the Court **DENIES** defendant's motion to dismiss plaintiffs' unjust enrichment claim (Claim VI).

**V.     CONCLUSION**

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss plaintiffs' complaint.

The Court **DISMISSES** Claims III, IV, and V, with leave to amend. Plaintiffs shall file any first amended complaint on or before July 13, 2026.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |